### STRAUS v. ROSENTHAL (two cases).

#### (Supreme Court, Appellate Term. February 18, 1910.)

**1. INSURANCE (§ 84*)—AGENTS—CONTRACTS—COMPENSATION.**

Where a subagent, employed by the general agent of an insurance company to solicit insurance for commissions on the business obtained by him, used for his own benefit the commissions as rebates on policies, paying the same over to insured as an inducement to obtain policies, he could not claim that the commissions had not been received according to the agreement.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 84.*]

**2. INSURANCE (§ 84*)—AGENTS—CONTRACTS—COMPENSATION—"LIEN."**

A contract with a subagent to solicit insurance for commissions, stipulating that the general agent will advance him $25 per week, and providing that all money collected by the subagent for premiums on policies must be turned over to the general agent, and that the subagent will repay the general agent all sums advanced, said advances to constitute a lien against all commissions, absolutely binds the subagent to repay all advances; the word "lien" meaning a claim which one has on the property of another as a security for a debt, contemplating that the advances constitute a debt.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 84.*

For other definitions, see Words and Phrases, vol. 5, pp. 4144–4153; vol. 8, p. 7707.]

**3. EVIDENCE (§ 397*)—PAROL EVIDENCE—VARYING TERMS OF WRITTEN INSTRUMENTS—ADMISSIBILITY.**

Parol evidence, contradicting the terms of a written contract, is inadmissible, in the absence of allegations of fraud.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1756–1765; Dec. Dig. § 397.*]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Actions by Ferdinand Straus against Siegfried W. Rosenthal and against Samuel W. Rosenthal. From a judgment for defendant in each case, plaintiff appeals. Reversed, and new trial ordered.

Argued before SEABURY, LEHMAN, and BIJUR, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Mark Eisner, for appellant.
Rosenthal, Steckler & Levi, for respondents.

LEHMAN, J.   The plaintiff has brought actions against Siegfried
W. Rosenthal and Samuel W. Rosenthal.   The two actions were tried
separately, except that some testimony in the first action was admitted
on the record of the second action by stipulation; but the same ques-
tions on appeal are presented in both cases.   The pleadings were oral.
The complaint was for "money loaned," and the answer, "general de-
nial; payment; breach of contract."

The plaintiff, a general agent of the Equitable Life Assurance So-
ciety, made contracts with each of the defendants to procure their
services as subagents.   This contract in each case provided that the
defendants should receive as commissions upon all business obtained
by them a percentage of the premiums for the first, second, and fourth
years of the assurance, varying from 25 per cent. to 2½ per cent.
according to the kind of business, and an additional 25 per cent. of
the first year's premiums for an expense account.   The contracts were
made upon a regular printed form, but at the same time the parties
executed additional contracts as follows:

"January 3, 1905.

"Mr. Siegfried W. Rosenthal—Dear Sir:  In connection with contract made
with you this day, it is hereby agreed that I will advance you the sum of
twenty-five dollars ($25) per week, you agreeing to write and pay for during
the first three months of the year seventy-five thousand dollars ($75,000) of
new business in accordance with the bonus rules of the society, and two hun-
dred thousand dollars ($200,000) new business before the 31st day of Decem-
ber, 1905.   It is also agreed that all moneys collected by you for premiums
on policies are to be turned over to me, and you hereby agree to repay to me
all sums advanced to you, said advances to constitute a lien against any and
all commissions due you or to become due.

"Yours truly,                              [Signed]  Ferd. Straus.
"I agree to the above.
   "[Signed]                                 Siegfried W. Rosenthal."

A contract in the same form was entered into between the plaintiff
and Samuel W. Rosenthal.   The plaintiff claims that under this con-
tract he advanced to each defendant the sum of $325, and sues for the
return of this sum, after deducting the commissions on premiums
credited to the respective defendants.   He proved by checks to each
defendant's order a payment of $50 on January 7th, and payments of
$25 every week thereafter until March 27, 1905.   He also showed that
he received for the check of $50 two receipts as follows:

"January 7, 1905.

"Received from Ferdinand Straus the sum of twenty-five dollars as an ad-
vance, the same, together with all other indebtedness owed by me to him, to
be a lien against any and all commissions due me or to become due.  I hereby
guarantee to repay to Ferdinand Straus all indebtedness due by me to him."

For all subsequent payments he received receipts in the same form,
or the following form:

"Received of Ferdinand Straus the sum of twenty-five dollars ($25.00) as
an advance, upon the understanding that until said amount shall have been
fully repaid, with interest, the same shall constitute a lien upon and be re-
paid from any and all first year's and renewal commissions and percentage

-allowance accruing to me in any manner whatsoever, with interest at the rate of five per cent. (5%) per annum, to be computed up to and paid annually on the 31st day of December in each year; any and all compensation ac-·cruing being applied first to the payment of interest upon the total indebtedness on said December 31st in each year, and afterwards to the payment of the principal sum then due; it being further understood that any balance ·outstanding upon the termination of my contract arrangements shall thereupon become immediately due and payable by me in cash, with interest."

It seems to me that under the additional contracts of January 3, 1905, the payment of · the $25 advance weekly was dependent upon ·each defendant writing $75,000 insurance in the first 3 months. Concededly they both failed to write this amount. The two receipts, in the sum of $25 each, for the $50 paid on January 7th, show that this amount was regarded as advances under this contract, even though that amount was probably advanced at that time with the express understanding that it was to be used by the defendants to purchase their release from a contract with another agent, who had advanced them such sum. Including this sum the plaintiff has proven advances made under the contract amounting to $325, or the full amount agreed upon for the 13 weeks constituting the three months. Therefore, even if the defendants' plea of breach of contract is available as a defense to this action, they have entirely failed to sustain their plea.

The plaintiff showed that he had credited the defendants with commissions on certain renewal premiums, and that he had paid the defendants the commissions on the first-year premiums called for by their contracts, or had allowed them to deduct the commissions from the premiums before they paid them over. It seems that the defendants used these commissions as rebates upon the policies, paying them over to the assured as an inducement to obtain the contract. Inasmuch, however, as they apparently did this for their own benefit, they cannot now claim that they have not received their commissions according to the agreement.

The judgments in favor of the defendants can therefore be sustained only upon the theory that the defendants were bound to repay the advances only out of commissions received. They claim that the additional contract of January 3d should be so interpreted, or is ambiguous, and therefore parol testimony was admissible to show that this was the intent of the parties. It seems to me that the contract clearly provides that the defendants agree absolutely to repay all sums advanced to them by the words, "You hereby agree to repay to me all sums advanced to you," and that this was the understanding of the parties is shown by the receipts in evidence. The defendants, however, claim that these words are limited by the subsequent words, "said advances to constitute a lien against any and all commissions due you or to become due," and that the whole clause, read together, shows an intent that the advances should be repaid only out of commissions.

It seems to me that such an interpretation is very strained; on the contrary, the use of the word "lien" seems to show rather that the parties contemplated that the advances were to constitute a debt. Bouvier's Law Dictionary defines a lien as a "hold or claim which one

person has upon the property of another as a security for some debt or charge," and adds:

"In its most extensive signification, the term 'lien' includes every case in which real or personal property is charged with the payment of a debt or duty. * * * In its more limited as well as commoner ·sense, the word 'lien' includes a mere right to hold the property of another as security until some claim is paid."

I therefore conclude that there was no ambiguity in this contract that would admit parol testimony to show that the intent of the parties was that the advances were repayable only out of commissions. Certainly the testimony that there was an express agreement that the advances were not to be repaid, except in the way claimed by the defendants, was incompetent, in the absence of an allegation of fraud. It in no wise explained the meaning of the instrument, but, contradicted its terms. Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961; Lossing v. Cushman, 195 N. Y. 386, 389, 88 N. E. 649.

The judgment in each case should be reversed, and a new trial ordered, with costs to appellant to abide the event.

SEABURY, J., concurs.

BIJUR, J. I concur for reversal. In addition to the reasons·set forth by Mr. Justice LEHMAN, it must be noted that, even if the "advances" were to be repaid only out of a fund (i. e., premiums) to be created from insurance obtained by the defendants, they agreed to provide that fund by way of premiums on $75,000 worth of insurance within the first three months. Their failure to do so entitled the plaintiff to a recovery.

Judgment in each case reversed, and a new trial ordered, with costs to the appellant to abide the event.