Joseph Dobbins, Respondent, *v.* The Pratt Chuck Company, Appellant.

Third Department, September 12, 1924.

Contracts — action against corporation on written contract to sell plaintiff all steel scrap — recovery had on theory that defendant by oral contract agreed to sell steel scrap of corporation owned by it — neither pleading nor evidence establishes such contract — oral testimony could not be admitted to enlarge written contract — complaint dismissed.

The judgment in favor of the plaintiff should be reversed and the complaint dismissed in an action on a written contract wherein the complaint alleges that the defendant agreed to sell to the plaintiff a certain amount of steel scrap and that it failed to deliver 200 tons, and where it appears by the evidence that the contract in writing provided that the defendant would sell all steel scrap for a certain period and that in fact the defendant did deliver to the plaintiff all scrap produced by it during the contract period, for the plaintiff cannot be allowed to recover on the theory that the defendant agreed to sell steel scrap produced by another corporation owned by the defendant, which agreement was not a part of the written contract and was not pleaded or proven.

Furthermore, the plaintiff could not introduce oral testimony to enlarge the terms of the written contract to show the existence of an oral contract for the sale of the steel scrap belonging to the other corporation.

Appeal by the defendant, The Pratt Chuck Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cortland on the 19th day of May, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the 18th day of May, 1923, denying its motion for a new trial made upon the minutes.

*Miller & Hubbell [Arthur L. Evans* of counsel], for the appellant.

*James F. Dougherty [Clayton R. Lusk* of counsel], for the respondent.

Cochrane, P. J.:

The complaint, after alleging that the plaintiff was doing business under the name of Dobbins Brothers and that the defendant was a domestic corporation, continues as follows: " Plaintiff alleges that heretofore and on or about the 7th day of July, 1916, the plaintiff and the defendant corporation entered into a contract in writing, whereby the defendant agreed to sell to the plaintiff, and the plaintiff agreed to purchase, the entire output of heavy and light scrap steel, of the said defendant corporation for one year from the 7th day of July, 1916, estimated at Fourteen Hundred Tons (1400) at and for the following prices: Heavy scrap, $12.40 per gross ton, f. o. b. Frankfort, N. Y. Light scrap, $10.10 per gross ton, f. o. b. Frankfort, N. Y." The complaint then alleges that pursuant to said contract the defendant delivered about 1,200

tons of scrap steel, leaving 100 tons of heavy scrap and 100 tons of light scrap undelivered; that the plaintiff relying on said contract had sold to divers persons the said 1,400 tons and was compelled to go into the open market and purchase the 200 tons balance due plaintiff under said contract; that the plaintiff has performed all the conditions of the contract on his part but the defendant has refused to deliver said 200 tons of scrap steel; and for the damages occasioned by reason of the facts aforesaid judgment is demanded.

The " contract in writing " alleged in the complaint consists of a letter from the defendant to the plaintiff dated July 6, 1916, and an answer thereto from the plaintiff to the defendant dated July 7, 1916, the material parts of which are as follows:

" THE PRATT CHUCK CO.                          *July 6th,* 1916.
          " Frankfort, N. Y.
                              " U. S. A.
" DOBBINS BROTHERS,
          " Homer, N. Y.:

" GENTLEMEN: Referring to your recent visit relative to Scrap, are pleased to advise that we will accept your contract for year ending June 30th, 1917, as per offer which we now make as follows:
          " Heavy Scrap — $12.40 per G. T.— F. O. B. cars Frankfort.
          " Light   Scrap — $10.10 per G. T.— F. O. B. cars Frankfort.
          " 30 days net.

" Kindly advise by return mail if you wish the Scrap at above prices as we are withholding acceptance from other parties.
                    " Very truly yours,
                         " THE PRATT CHUCK CO.
                              · " C. H. BUCKLEY."

" JOSEPH DOBBINS                    MAURICE DOBBINS.
                         " HOMER, N. Y., *July* 7, 1916.
" THE PRATT CHUCK CO.,
          " Frankfort, N. Y.
  " *   *   *

" GENTLEMEN: Your letter of July 6th at hand.   We accept your offer on all your steel scrap for one year to July 1, 1917, at prices as below.
          " Heavy steel scrap $12.40 G. T. Frank.
          " Light   steel scrap $10.10 G. T. Frank.
" This is a high price but will take the gamble.
                    " Respect. yours,
                         " DOBBINS BROS."

The plaintiff conceded at the trial that the 1,400 tons of scrap mentioned in the complaint was only an estimate as therein stated and that he had received all the scrap produced by the defendant

for the year covered by the contract from July 1, 1916, to July 1, 1917, and that he was making no claim therefor. His contention is that in the preliminary negotiations leading up to and merged in the written communications of July sixth and seventh, it was understood that the defendant would sell him not only its product of steel scrap but also the product of the Pratt Fork and Hoe Corporation, a separate and independent corporation, and he has been permitted to recover on this alleged oral agreement. The business of the defendant consisted of various departments, one of which was formerly known as the fork and hoe department, and all of which departments produced scrap. Prior to the contract in question a corporation was formed under the name of the Pratt Fork and Hoe Corporation which bought the business formerly conducted in the fork and hoe department of the defendant. The defendant owned the stock of the new corporation but otherwise there seems to have been no identity of business. The two corporations had different officers and different men were responsible for their several activities. It is undisputed evidence that the defendant transferred to the new corporation all of the buildings and machinery and other assets connected with the fork and hoe branch of its business and leased to it the plant and the land on which the plant was located " and from that time on until the present time that has been an entirely separate and distinct corporation " and has been subsequently merged into the Union Fork and Hoe Corporation of Columbus, O.

The theory of the plaintiff seems to be that the distinction between the two corporations should be disregarded. Undoubtedly a corporate entity may not be used as an instrument of fraud. But this new corporation had a legitimate and complete existence before the commencement of the negotiations leading up to the contract in question. If there was any fraud or unfairness or a mutual mistake between the parties growing out of the ·duplex existence of the two corporations a court of equity would have ample power to accomplish justice and prevent the successful evasion of the law. (*Quaid* v. *Ratkowsky*, 183 App. Div. 428; affd., 224 N. Y. 624; *Goss & Co.* v. *Goss, No. 2*, 147 App. Div. 698, 702; affd., 207 N. Y. 742.) But no such claim is made. So too if the defendant had made a valid contract to sell the product of the other corporation such contract would be enforcible at law. But here again neither is such a contract alleged in the complaint nor established by the evidence. The complaint specifically alleges a contract in *writing* for the purchase by the plaintiff of " the entire output of heavy and light scrap steel of the said defendant corporation." The plaintiff's letter to the defendant of

July 7, 1916, states specifically as follows: " We accept your offer on all your steel scrap." There is not a word in the written contract indicating a purchase by the plaintiff of the product of any other person or corporation. There is no indefiniteness or ambiguity about this contract. It required no explanation; it permitted no variance. The written contract as alleged in the complaint and as proved at the trial was complete in itself and oral testimony to enlarge its provisions was inadmissible. (*Murdock* v. *Gould*, 193 N. Y. 369, 375.) It is fundamental that a recovery must be according to the allegations and the proofs. This recovery accords with neither. The fact if it be a fact that the plaintiff received some of the product of the Pratt Fork and Hoe Corporation proves nothing except that he has received more than under his contract with the defendant he was entitled to receive. There might be significance in that fact if the nature of the contract were an open question and permissive of verbal testimony. It may be added that an analysis of the testimony discloses much doubt as to whether there was at any time a verbal understanding that plaintiff was to purchase the scrap of the Pratt Fork and Hoe Corporation but for the reasons heretofore stated it is unnecessary to consider that question.

It follows that the judgment and order should be reversed on the law and the complaint dismissed, with costs.

All concur.

Judgment and order reversed on the law and complaint dismissed, with costs.