CHARLES L. EDEY and Others, Respondents, *v.* SAMUEL SEGAR, Appellant, Impleaded with HARRIET MULLINS.

First Department, July 2, 1920.

**Principal and agent — stockbrokers' action to establish lien upon account — evidence not establishing interest of defendant in another account — Statute of Frauds — agreement to answer for default of third person.**

In an action by a firm of stockbrokers to establish the defendant's liability upon his own account and also upon the account of a codefendant, and to have the securities held by the plaintiffs declared subject to a lien for said sum, and to have the defendant adjudged liable for any deficiency, it appeared that the defendant had speculated through the plaintiffs on accounts standing in his own name and that another account was carried by the plaintiffs in the name of a woman who was the defendant's stenographer and who was made a party to the action but who did not appear. The plaintiffs seek to charge the defendant on the theory that he owned or was responsible for the other account. On all the evidence, *held*, that the defendant had no interest in the other account and is not liable for a deficit therein, and that the complaint should be dismissed.

An agreement to become liable for the debt or default of a third person cannot be established by oral evidence, and there must be some note or memorandum thereof in writing subscribed by the party to be charged.

SMITH, J., dissents.

APPEAL by the defendant, Samuel Segar, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 14th day of February, 1919, upon the decision of the court rendered after a trial at the New York Special Term.

*David Leventritt* of counsel [*William L. Carns* and *John M. Greenfield, Jr.,* with him on the brief], *Carns, Leventritt & Goetz,* attorneys, for the appellant.

*William F. Unger* of counsel [*Abraham Freedman* with him on the brief], *Goldman & Unger,* attorneys, for the respondents.

PAGE, J.:

The plaintiffs are members of a firm carrying on a stock brokerage business in the city of New York, under the firm name of Edey, Leslie & Sloan. The action was brought to have it adjudged that the sum of $23,743.15 with interest is due and owing from the defendant Segar; that the plaintiffs have a lien for that amount on the securities held by them; that the securities be sold for the satisfaction of the lien and that the defendant Segar be adjudged to pay any deficiency. Harriet Mullins was not served with summons and did not appear in the action. Samuel Segar opened a speculation account with the plaintiffs in his own name on or about March 14, 1916, and thereafter was at plaintiffs' offices every business day conducting his operations and dealt in many thousands of shares of stock each month. During the period from March, 1916, to October, 1917, his purchases and sales amounted to approximately 205,400 shares. He was at that time the plaintiffs' largest customer. On June 8, 1916, an account was opened with the plaintiffs in the name of Harriet Mullins, who was Segar's stenographer. The first of these accounts we will hereafter denominate the Segar account and the second the Mullins account. On December 31, 1917, in the Segar account there was a debit balance of $7,889.32 against which the plaintiffs held 200 shares of the common stock of the Baldwin Locomotive Works. In the Mullins account there was a debit balance of $15,853.83, against which the plaintiffs held 200 shares of American Writing Paper Company preferred stock and four Anglo-French bonds. On January 11, 1918, Segar tendered to the plaintiffs the sum of $7,889.32, together with the interest thereon, and demanded the delivery of the 200 shares of Baldwin Locomotive Works stock. The plaintiffs refused the tender and demand solely on the ground that Segar was also liable for the Mullins account. This action was thereafter brought. The sole question presented for decision was whether Segar owned or was responsible for the Mullins account. This presented questions of fact and although the learned trial justice has found for the plaintiffs, he has made many findings of fact that would lead to a contrary conclusion.

The Mullins account was opened at the request of Segar.

The plaintiffs claim that he asked them to open the account for him in the name of Harriet Mullins, his stenographer, and made a deposit with them of $1,000, and from that fact they asked the court to infer that this was Segar's account although carried in the name of Harriet Mullins, and the court found: " In accordance with the defendant Segar's said request, the plaintiffs on June 8, 1916, opened for him an account in the name of the defendant Mullins and purchased 100 Reading at 106⅛ and 100 Marine Preferred at 96½." The court has found the following facts in regard to the opening of this account. On June 8, 1916, an account was opened with the plaintiffs in the name of Harriet Mullins with the deposit of $1,000 in cash and an order for 200 shares of stock. On that date the plaintiffs sent to Miss Mullins at 2170 Washington avenue (her home address) a letter as follows:

" EDEY, LESLIE & SLOAN,
" Members N. Y. Stock Exchange,
" 74 Broadway,
" NEW YORK, *June* 8, 1916.

" Miss HARRIET MULLINS,
" 2170 Washington Ave.,
" Bronx:

" DEAR MADAM.— We beg to advise you that we have this day received from you $1,000 which amount we have placed to the credit of your account. We have bought for your account 100 shares of Reading at 106⅛ and 100 shares of Marine P'fd at 96½ as per enclosed notice.

" Yours very truly,
" EDEY, LESLIE & SLOAN."

Inclosed therein was the usual " bought notice " from broker to customer, addressed to Miss Harriet Mullins stating that they had that day " bought for your account and risk," the above-mentioned stock, giving price, time of purchase, commission, gross amount and the names of the brokers from whom bought, which also contained the agreement between broker and customer with relation to the right of the broker to pledge the said stocks. The plaintiffs sent to Harriet Mullins similar bought notices of each purchase stated in the Mullins account and sold notices for each sale stated in that account. Monthly

statements of the Mullins account were sent to Miss Mullins at her address on Washington avenue for each month from June, 1916, to December, 1917, inclusive. Plaintiffs sent monthly statements of the Segar account to defendant Segar at his address, Hotel Algonquin, except in one month when Segar was absent from the city on his vacation. Plaintiffs never sent to Segar a statement of the Mullins account. Harriet Mullins authorized defendant Segar to open an account for her with the plaintiffs, and authorized him to conduct purchases and sales in that account for her, and most of the orders to buy and sell stocks in the Mullins account were given by the defendant Segar. The Segar account and the Mullins account were never carried on the plaintiffs' books as one account or as a combined account. There was no memorandum or notation on plaintiffs' books of account showing that defendant Segar had any connection with or responsibility for the Mullins account. There was a rule of the New York Stock Exchange which read as follows: " That every member of the Exchange be required to use due diligence to learn the essential facts relating to every account accepted by himself or by his clerks or representatives, and also relating to the possible use of a name for the account other than that of the party interested."

Plaintiffs did not produce at the trial any book, paper or record made or kept while these accounts were running, showing any account combined of these two accounts, or of the margin on any such combined account, and kept no combined account in their books. There were three deposits in cash made in the Mullins account as follows: June 8, 1916, $1,000; September 18, 1916, $2,000; December 15, 1916, $1,000. The court found specifically that Harriet Mullins furnished the cash deposited to her account in each instance, and thus stated the source from which it was obtained; Harriet Mullins received from her sister Daisy Mullins $800 of the $1,000 deposited with plaintiffs on June 8, 1916, and $500 of the $1,000 deposited on December 15, 1916; Daisy Mullins withdrew $800 from savings bank accounts on June 8, 1916, and $500 similarly on December 15, 1916, and handed over these respective sums to Harriet Mullins. All the sums withdrawn from the Mullins account were paid to Harriet Mullins and divided with her sister Daisy. The interest on the Anglo-

French bonds was remitted by the plaintiffs to Harriet Mullins. All of the foregoing facts were found by the court, and the evidence amply sustains the findings. It is clear that the Mullins account was the account of Harriet Mullins and was not the account of the defendant Segar. Liability for the deficit in the Mullins account is predicated upon the testimony of the plaintiff Edey that on two occasions he demanded that Segar deposit additional margin for the Mullins account; that Segar promised to do so; that on October 15, 1917, the plaintiffs wrote to Segar demanding $5,000 margin and that the plaintiff called and promised to give the margin. The defendant Segar denies that any margin was ever demanded from him on the Mullins account, or that he ever promised to pay such margin; that the only demand ever made was for margin on his own account. The plaintiffs' letter of October fifteenth tends to confirm the defendant's version. It reads as follows:

" Dear Mr. Segar.— Please send us Five thousand ($5,000) to margin your account.

" Respectfully,
" EDEY, LESLIE & SLOAN."

It is to be noted that the demand is not to margin " your accounts " but the singular form is used. Because of the fact that there is liability to dispute and misunderstanding when one person claims that a second person has agreed to be liable for the debt or default of a third person, the law provides that such a promise may not rest upon mere oral evidence, but some note or memorandum thereof must be in writing and subscribed by the party to be charged. (Pers. Prop. Law, § 31, subd. 2.) In the case under consideration the documentary evidence tends to corroborate the defendant's version of the facts of this case and to disprove the plaintiffs' contention. It is interesting to note, in this connection, that the learned trial justice found that the plaintiffs' letter of January 12, 1918, was the first writing in which plaintiffs claimed defendant Segar was responsible for the Mullins account, and that this was after defendant Segar had written to plaintiffs directing them to transfer his account to other brokers upon payment of the indebtedness in the Segar account.

The judgment and findings inconsistent with this opinion are reversed, with costs to appellant, and judgment directed to be entered for the defendant dismissing the complaint upon the merits, with costs.

LAUGHLIN, DOWLING and MERRELL, JJ., concur; SMITH, J., dissents.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.